**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GLENDA M.,<br><br>        Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 22-03137 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Glenda M.'s[1] ("Plaintiff") appeal from the final decision of the Commissioner of the Social Security Administration ("Defendant" or the "Commissioner"), denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C § 423, *et. seq*. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Court **REVERSES** the Commissioner's decision to deny Plaintiff social security benefits and **REMANDS** the matter to the Commissioner to re-assess Plaintiff's residual functioning capacity ("RFC") and if it is necessary to reach step five, to make the requisite factual findings with regard to Plaintiff's ability to do any other work based on the re-evaluated RFC.

---

[1]     The Court identifies Plaintiff by first name and last initial pursuant to D.N.J. Standing Order 2021-10.

I.   **BACKGROUND**

In this appeal, the Court is presented with two questions. First, whether the Administrative Law Judge ("ALJ") meaningfully considered Plaintiff's severe obesity in her September 20, 2021, decision at steps three and four of her disability determination analysis. Second, whether at step four the ALJ provided sufficient rationale for her determination of Plaintiff's residual functional capacity.

A.   **PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on April 10, 2018, alleging an onset date of December 1, 2017. (AR 15, 131.[2]) Plaintiff's claim was denied initially on July 21, 2020, and again upon remand on September 20, 2021. (AR 24, 137.) The ALJ conducted her first administrative hearing on February 21, 2020, and on July 21, 2020, she issued a decision, finding that Plaintiff was not disabled. (AR 131, 137.) The Appeals Council granted Plaintiff's request for review on January 4, 2021, vacated the ALJ's first hearing decision, and remanded the case to the ALJ. (AR 143-44.) The Appeals Council determined that the first decision did not contain an evaluation of the prior administrative medical findings by the two state agency consultants. (AR 143.) The Appeals Council also instructed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references of record in support of assessed limitations." (*Id.*)

---

[2]   The Administrative Record ("Record" or "AR") is available at ECF No. 4-1 through 4-8. Citations to the Record will reference only page numbers in the Record without the corresponding ECF numbers. However, page numbers for brief cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

The ALJ held the second hearing on April 7, 2021. (AR 15.) On September 20, 2021, the ALJ issued her second decision, finding that Plaintiff is not disabled. (AR 24.) The Appeals Council denied Plaintiff's request for review on March 30, 2022. (AR 1-3.)

On May 26, 2022, Plaintiff filed this timely appeal in the District Court for the District of New Jersey. (*See* ECF No. 1.) The Commissioner filed the Administrative Record on July 19, 2022. (*See* ECF No. 4.) Plaintiff filed her moving brief on February 22, 2023, pursuant to Local Civil Rule 9.1. (*See* ECF No. 8.) The Commissioner filed opposition on May 10, 2023. (*See* ECF No. 12.)

### B.   THE ALJ'S SECOND DECISION

On September 20, 2021, the ALJ issued her second decision, finding that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 24.) At the time of the second hearing, Plaintiff was forty-eight years old and had a sixth-grade education.[3] (AR 39-40.) The ALJ found that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2022. (AR 18.) The ALJ then set forth the Social Security Administration's ("SSA") five-step sequential process for determining whether an individual is disabled. (AR 16-17.) At step one of her analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity[4] since December 1, 2017, the alleged disability onset date. (AR 18.) At step two of the

---

[3]   The Court also notes that Plaintiff, a native of Honduras, appeared for both hearings with a Spanish interpreter. (AR 64, 74.)

[4]   "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* § (a). "Gainful work activity is work activity that the claimant do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

analysis, the ALJ found that Plaintiff had the following severe impairments that significantly limit Plaintiff's ability to perform basic work activities: chronic tendonitis of left shoulder; status post decompression of left shoulder; cervicalgia; cervical spondylosis; status post right shoulder surgery; back impairment; left heel impairment; left knee impairment; and obesity. (*Id.*)

At step three, the ALJ determined, after a comprehensive examination of Plaintiff's medical conditions, that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter, "Appendix 1"). (AR 18-19.) At step four, the ALJ found that Plaintiff possessed the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), with exceptions. (AR 19.) Specifically, the ALJ stated that Plaintiff could "use her hands for fingering and grasping frequently and reach overhead occasionally." (*Id.*) The ALJ also held that "[b]ased on pain and weakness, the claimant would be off-task 5% of an 8-hour workday, and absent 5 times per year." (*Id.*) At step five, the ALJ found Plaintiff capable of performing past relevant work as a production assembler, and thus concluded that Plaintiff had not been disabled. (AR 23-25.). (AR 24.)

## II.   **LEGAL STANDARD**

### A.   DISABILITY DETERMINATION

An individual is "disabled" and therefore eligible for disability insurance benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot engage in his previous work or in "any other kind of substantial gainful work which exists in the

national economy," *i.e.*, work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner employs a five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof for the first four steps of the analysis, and the burden shifts to the Commissioner of the SSA for the fifth step. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. 20 C.F.R. § 404.1520(a)(4)(i), (b). Second, the Commissioner considers "the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). The claimant must have a "medically determinable impairment" or combination of impairments severe enough to limit the claimant's ability to perform basic work activities for a continuous period of at least twelve months. *Id.*; *id.* at § 404.1509. The claimant bears the burden of establishing the first two requirements, and failure to satisfy either of the first two requirements automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If the claimant satisfies her burden at steps one and two, she proceeds to the third step. At step three, the Commissioner considers the "medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(iii). The impairment or impairments must meet or equal a listing in Appendix 1 of C.F.R. Part 404, Subpart P. *Id.* § 404.1520(d). The impairment or impairments are "medically equivalent to a listed impairment . . . if [they are] at least equal in severity and duration to the criteria of any listed

impairment." *Id.* § 404.1526(a). If the claimant is able to make a sufficient showing at step three, she is deemed disabled. *Id.* § 404.1520(a)(iii).

However, if the claimant fails to make a sufficient showing at the third step, the analysis proceeds to an evaluation of the claimant's RFC and past relevant work at the fourth step. *Id.* § 404.1520(a)(4)(iv). RFC is the most the claimant can do in a work setting despite her limitations. *Id.* § 404.1545(a)(1). The Commissioner "assess[es] [the claimant's] residual functional capacity based on all the relevant evidence in [her] case record," and "consider[s] all of [the claimant's] medically determinable impairments," including ones that are not "severe" pursuant to §§ 4041520(c), 404.1521, and 404.1523. *Id.* § 404.1545(a)(1)-(3). The Commissioner assesses RFC based on "all of the relevant medical and other evidence." *Id.* § 404.1545(a)(3). Past relevant work is "work that [the claimant] ha[s] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work." *Plummer*, 186 F.3d at 428 (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)).

If the claimant is incapable of performing her past relevant work, the analysis proceeds to the fifth and final step. *See id.* § 404.1520(a)(4)(iv)-(v); *Plummer*, 186 F.3d at 428. At step five, the claimant must be unable to adjust to other work in light of her RFC, age, education, and work experience to be considered disabled. *See id.* § 404.1520(a)(4)(v), (g). Before denying a claim at step five, the Commissioner must show that the claimant is capable of other work existing "in significant numbers in the national economy." *Id.* § 404.1560(c)(2); *see also Poulos*, 474 F.3d at 92.

B.   **STANDARD OF REVIEW**

District courts may "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the decision, the court determines whether the ALJ's findings are supported by substantial evidence. *See id.*; *see also Poulos*, 474 F.3d at 91. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (internal quotation marks and citation omitted).

The district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, this limitation on a reviewing court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

## III.   DISCUSSION

In support of her appeal, Plaintiff advances two principal arguments why the ALJ's decision should be reversed: (1) the ALJ's decision does not devote meaningful consideration of Plaintiff's severe obesity (*see* ECF No. 8 at 7-16); and (2) the ALJ did not include a clear and satisfactory explication of the basis of her RFC evaluation sufficient to enable judicial review (*see id.* at 16-29).

Based on the Court's review of the ALJ's decision (AR 15-24), and the Administrative Record submitted by the Commissioner (*see generally* AR), the Court finds good cause to **REVERSE** and **REMAND** the Commissioner's finding that Plaintiff is not disabled and remand for a re-assessment of Plaintiff's RFC because the ALJ did not provide sufficient reasoning for the Court to determine that her findings as to Plaintiff's obesity and RFC are supported by substantial evidence.

### A.   PLAINTIFF'S SEVERE OBESITY

Plaintiff first argues that the ALJ did not devote meaningful consideration to Plaintiff's obesity. (ECF No. 8 at 7.) The Court agrees.

There exists no independent listing for obesity, and so a favorable finding at Step Three will either result from (1) a finding "that an individual with obesity 'meets' the requirements of a listing if [he] has another impairment that, by itself, meets the requirements of a listing"; or (2) if there exists "an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *5 (Sept. 12, 2002). "For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.* This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." *Id.* The regulations direct that a finding of

equivalence at Step Three is appropriate "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." *Id.* The ALJ, however, "will not make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* at *6. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.*

"[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with [his] impairments, on [his] workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). Though not required "to use particular language or adhere to a particular format in conducting [her] analysis," *Jones*, 364 F.3d at 505, an ALJ is required to "fully develop the record and explain [her] findings at step three, including an analysis of whether and why [the plaintiff's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments," *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). "[A]bsent analysis of the cumulative impact of [the plaintiff's] obesity and other impairments on [the plaintiff's] functional capabilities, [the Court] is at a loss in [its] reviewing function." *Diaz*, 577 F.3d at 504.

The ALJ failed to adequately consider Plaintiff's obesity at steps three and four. (AR 19, 20, 22, 23.) For instance, the ALJ includes only one mention of obesity at step three. (*Id.* at 19 (stating "even if obesity is considered in combination with the claimant's other impairments, the claimant does not meet or equal any listing in Appendix 1.").) But pursuant to *Burnett*, the ALJ is required to "fully develop the record" and "includ[e] an analysis of whether and why [the plaintiff's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 120. Here, such an analysis of why Plaintiff's

9

obesity, alone, or in combination with other impairments is not equal to a listed impairment is absent. "Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504 (3d Cir. 2009). As such, the ALJ's finding at step three that Plaintiff's obesity, considered singly and in combination with Plaintiff's other impairments, did not meet or equal a listing was not based on substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008) ("There is no way to review the ALJ's decision in this case because no reasons were given for his conclusion that [the plaintiff's] impairments in combination did not meet or equal an Appendix 1 listing.").

Next, the ALJ also errs at step four by again not adequately addressing Plaintiff's obesity. As noted earlier, the ALJ is required to consider the impact of Plaintiff's obesity singly and in combination with other impairments at steps three, four, and five. *Diaz*, 577 F.3d at 504. Again, the ALJ makes limited mention of obesity at step four outside of the following:

> In accordance with Social Security Ruling 19-2p, obesity is considered a severe impairment, and it has been taken into consideration in evaluating the claimant's residual functional capacity. SSR 19-2p notes that obesity can cause limitation of exertional and postural functions, and that in cases involving obesity, fatigue may affect an individual's physical and mental ability to sustain work activity. SSR 19-2p also states that the combined effects of obesity with other impairments may be greater than might be expected without obesity. In the present case, obesity's effect on the claimant's other impairments is reflected in the above-stated residual functional capacity finding.

[(*Id.* at 22.)]

This one conclusory paragraph prevents the Court from performing a meaningful judicial review. *Diaz*, 577 F.3d at 504. As mentioned earlier, obesity can exacerbate other impairments, especially musculoskeletal, respiratory, and cardiovascular impairments. Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *5 (Sept. 12, 2002). In this case, the ALJ notes that Plaintiff suffers from several

musculoskeletal impairments such as chronic tendonitis of the left shoulder; status post decompression of the left shoulder; cervicalgia (neck pain), cervical spondylosis; status post right shoulder surgery; status post knee surgery; back impairment; left heel impairment; and left knee impairment. (AR 18.) But, the ALJ does not provide any analysis as to how Plaintiff's obesity does or does not exacerbate these impairments outside of one conclusory statement. Without a full analysis indicating why the ALJ does not believe Plaintiff's obesity exacerbates Plaintiff's other impairments, the Court is unable to perform a meaningful judicial review. *See Diaz*, 577 F.3d at 504 ("absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function."). As a result, the Court will reverse and remand for the ALJ to perform further findings and analysis consistent with this Opinion.

### B. THE ALJ'S RFC ASSESSMENT

"In deciding a disability claim, an ALJ must clearly set forth the reasons for [her] decision. Conclusory statements . . . are insufficient. The ALJ must provide a discussion of the evidence and an explanation of reasoning for [her] conclusion to sufficiently enable meaningful judicial review." *Walsh v. Colvin*, Civ. No. 15-2550, 2017 WL 930295, at *2 (E.D. Pa. Mar. 9, 2017) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)). Put differently, "[a]n ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citations omitted).

The ALJ's decision contains a "wealth of detail about the medical evidence," but fails to provide meaningful rationale of her RFC determinations regarding Plaintiff's absenteeism and off-task calculations. The ALJ determined that "[b]ased on pain and weakness, [Plaintiff] would be

11

off-task 5% of an 8-hour day, and absent 5 times per year." (AR 19.) However, the ALJ failed to provide a "logical bridge" between the specific medical evidence in the record and these determinations. In fact, the ALJ mentions these particular numbers only once in her conclusion at step four of her analysis. (AR 19-23.) These determinations by the ALJ, however, are critically important as demonstrated by the vocational expert's testimony during the first hearing. The vocational expert testified that "[o]nce an employee reached approximately 15% . . . of the day in which the employee is continuing to engage in work tasks, but, for whatever reason, is not working to the expected pace or effort, it becomes intolerable to the employers." (AR 94.) The vocational expert categorically stated that "at 15%, there is no competitive work." (*Id.*) Regarding the absenteeism, the vocational expert explained that the statistics from the Bureau of Labor indicated that employers would "tolerate a maximum range of 10 to 12 days per year, therefore, on high end, 1 day per month." (AR 95.) The Commissioner's opposition brief fails to address Plaintiff's argument as to these insufficiencies in the ALJ's reasoning regarding Plaintiff's absenteeism and off-task calculations. (ECF No. 8 at 28-29; ECF No. 12 at 15-18.) Thus, the Court finds that the ALJ failed to provide adequate reasoning or support for her conclusions.

Similarly, the Court cannot meaningfully review other conclusions about Plaintiff's RFC. The ALJ stated that Plaintiff has "residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with exceptions." (AR 19.) The appropriate federal regulations define light work as "involve[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, the "job is in this category when it requires a good deal of walking or standing, or . . . pushing and pulling of arm or leg controls." *Id.* Lastly, [t]o be considered capable of performing a full or wide range of light work, [employees] must have the ability to do substantially all of these activities." *Id.* While

the medical evidence, which is discussed in great detail by the ALJ, supports the ALJ's conclusion that Plaintiff is capable of occasional overhead reaching and frequent use of her hands for fingering and grasping (AR 19-23), the ALJ did not devote any meaningful discussion to Plaintiff's ability (or inability) to walk, stand, sit, and lift weight, individually or in combination. *See Barbour v. Kijakazi*, Civ. No. 20-0861, 2021 WL 4478332, at *4-5 (M.D. Pa. Sept. 30, 2021) (remanding because the ALJ's failure to adequately explain or define the extent of Plaintiff's inability to stand and walk rendered the ALJ's decision unreviewable); *Perrone v. Barnhart*, Civ. No. 07-1367, 2009 WL 742727, at *6 (D.N.J. Mar. 16, 2009) (reversing in part because the ALJ failed to justify his findings as to Plaintiff's inability to sit, stand, or walk for eight hours a day).

The ALJ listed several severe impairments of Plaintiff's back and left knee and acknowledged Plaintiff's testimony that she had a recent knee surgery. (AR 18, 20.) The ALJ emphasized several times that Plaintiff has "some resulting limitations" because of her severe impairments and that Plaintiff was "limited to light work, with additional limitations." (AR 20, 23.) However, the ALJ did not specify any limitations with Plaintiff's ability to walk, stand, sit, and lift weight, except noting that Plaintiff could reach overhead occasionally. (AR 19.) Nor did the ALJ adequately explain the conclusion that Plaintiff was not limited at all in these activities.[5] (*Id.* at 20.)

---

[5] This omission further undermines the ALJ's RFC determination in light of the ALJ's previous findings that Plaintiff was only capable of performing sedentary work. (AR 134.) The Court notes that in her first decision, the ALJ reviewed a substantially identical record and heard similar testimony from Plaintiff, yet she found that Plaintiff had the RFC to perform only sedentary work. (*Id.*) *See DePalma v. Kijakazi*, Civ. No. 22-475, 2023 WL 2870711, at *1-2 (M.D. Pa. Apr. 10, 2023) (remanding for the ALJ's failure to adequately explain the inconsistency between the first administrative finding that the claimant was capable of sedentary work and the following decision in which the ALJ determined that the claimant was capable of a range of light work).

The ALJ briefly referenced the medical findings of state agency consultants, Joseph Udomsaph, M.D. and Caroline Shubeck, M.D., who determined that Plaintiff could "frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday." (AR 22-23.) The ALJ found the consultants' evaluations of Plaintiff's ability to stand, walk, and lift weight "somewhat persuasive." (*Id.*) The ALJ acknowledged that the "consultants did not have the benefit of observing [Plaintiff] personally and they did not incorporate the entirety of the claimant's limitations." (AR 23.) Additionally, the consultants evaluated Plaintiff in 2018 and 2019 before her recent knee surgery. (AR 107-08, 122-23.) The ALJ concluded that the opinions were "partially consistent" with the overall medical evidence yet failed to discuss, resolve or factor in any inconsistencies when determining the extent of Plaintiff's limitations to her ability to stand, walk, sit and lift weight. (AR 23.)

The Court also notes that in Defendant's opposition brief, the Commissioner argues that "[t]he ALJ was persuaded by the records from Plaintiff's own doctor, who opined that Plaintiff could return to work on 'light-duty basis' in June 2018 for three hours a day and by August 2018, she was fully released for light duty work." (ECF No. 12 at 16.) However, the examination of those medical records reveals that the "light-duty work" Plaintiff was cleared to perform was bus driving with limitations to three hours a day. (AR 632 ("[W]e gave a note to return to work on a light-duty basis limiting the hours that she can drive to three hours per day[.]").) Previously, Plaintiff drove a school bus for twenty-five hours a week on average. (AR 75.[6]) The medical

---

[6]  Q A school bus. I see. Okay. And – I see. Was that full-time work?
 A No, part time.
 Q How many hours a week?
 A Depends, 25.

[(AR 75.)]

records also note that Plaintiff could not return to work on a light-duty basis because the employer did not have specific light duty work available for her. (AR 631.) Nothing in these records indicates that Plaintiff was cleared to stand, walk, or lift weight for prolonged periods of time during the workday.[7] As a result, it is unclear to the Court what, if any, limitations to Plaintiff's ability to walk, stand, and lift weight the ALJ considered in her final RFC determination. Without a more detailed functional analysis, the Court is unable to perform a "meaningful judicial review" of the ALJ's analysis at step four and her ultimate conclusion that Plaintiff was "capable of performing past relevant work as a production assembler" (AR 23-24). *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

As an additional matter, the Court received medical records which the ALJ did not consider because Plaintiff's counsel submitted them on September 20, 2021, the day of the ALJ's decision. (AR 929, 974-1024.) Although the evidence, which was never before the ALJ, becomes part of the administrative record on appeal, "it cannot be considered by the District Court in making its substantial evidence review[.]" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (citing *Matthews v. Apfel*, 239 F.3d 589, 593-94 (3d Cir. 2001) (explaining that the evidence, which was not before the ALJ, cannot be used to argue that the ALJ's decision was not supported by substantial evidence)). The Court may find that a remand is appropriate based on new, material evidence "where the claimant shows good cause why that evidence was not procured or presented before the ALJ's decision." *Chandler*, 667 F.3d at 360; *see also* 42 U.S.C. § 405(g) (1982). For evidence to be "new," the evidence cannot be cumulative of evidence already in the record. *Szubak v. Sec'y of Health & Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Here, the Court does not find

---

[7] In her application, Plaintiff notes that her previous substantial gainful activity as a machine assembler required her to stand for eight hours. (AR 423.) Plaintiff further testified that she did not have a choice to sit down. (AR 76.)

that this evidence is "new" because Plaintiff testified about her knee surgery and subsequent physical therapy sessions during the Hearing (AR 44-45), and the medical records filed after the ALJ's decision merely corroborates Plaintiff's testimony.[8]

For these reasons, the Court will vacate the ALJ's decision and remand to the Commissioner for further proceedings consistent with this opinion. On remand, the ALJ shall fully explain her findings and conclusions at step four, including an analysis of limitations on Plaintiff's ability to stand, walk, and lift weight and the ALJ's absenteeism and off-task calculations. Finally, if it is necessary to reach step five, the ALJ shall make the requisite factual findings with regard to Plaintiff's ability to perform other jobs based on the re-assessment of her RFC.[9]

## IV.  CONCLUSION

For the foregoing reasons, and for good cause shown, the Commissioner's decision to deny Plaintiff benefits is **REVERSED** and **REMANDED** to the ALJ for further findings consistent with this Memorandum Opinion. An appropriate Order follows.

Dated: September 29, 2023

GEORGETTE CASTNER
United States District Judge

---

[8] It is unclear why the medical evidence was not presented to the ALJ before she issued her second decision on September 20, 2021. The Court notes, however, that Plaintiff's counsel made continuous attempts to obtain the requested evidence (AR 38, 483, 485) and that the ALJ stated that she needed the updated medical records (AR 45).

[9] The Court expresses no view as to what those findings should be.